IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| VERN KILLS ON TOP, | Cause No. CV 01-192-BLG-CSO |
| Petitioner, | |
| vs. | ORDER DENYING RULE 60(b) |
| | MOTION AND DENYING |
| LEROY KIRKEGARD; ATTORNEY | CERTIFICATE OF APPEALABILITY |
| GENERAL OF THE STATE OF | |
| MONTANA, | |
| Respondents. | |

On May 26, 2009, this Court entered judgment dismissing this habeas corpus action. *Order (Doc. 92); Judgment (Doc. 93).* Relying on Fed. R. Civ. P. 60(b)(6), Petitioner Vern Kills On Top ("Kills On Top") now seeks to reopen the case. *See Br. in Supp. (Doc. 103) at 9 para. 1.* He seeks a determination of the merits of his claim that his 1998 state court sentence violates the Eighth Amendment's proportionality principle. The merits of that claim were not considered in the former proceedings because the claim was dismissed with prejudice as procedurally defaulted without excuse.

On December 10, 2007, the parties consented in writing to the jurisdiction of a United States Magistrate Judge for all purposes, including entry of judgment "and all post-judgment proceedings." *Consents (Doc. 55) at 1-2; Order (Doc. 56); see also D. Mont. L.R. 1.10(d), 73.1(a), 73.2 (eff. Dec. 1, 2005).*

1

## I. Background

### A. Direct and Collateral Proceedings in State Court

In October 1987, Kills On Top participated in kidnapping and robbing Mark Etchemendy. Etchemendy was held and repeatedly assaulted over a period of about 12 hours. Two of the other people involved, Diane Bull Coming and Petitioner's brother Lester, killed Etchemendy. Vern Kills On Top was not present when Etchemendy was killed.

Kills On Top was convicted of robbery, aggravated kidnapping, and deliberate homicide by felony murder. Although Vern Kills On Top was not present at Etchemendy's murder, both brothers were initially sentenced to death. The sentences were affirmed on direct appeal but were vacated in postconviction proceedings. The Montana Supreme Court held that sentencing the less-culpable Vern Kills On Top to death violated the proportionality principle in the Montana Constitution, Art. II, § 22. *See Kills On Top v. State*, 928 P.2d 182, 204-07 (Mont. 1996).

On November 10, 1998, Kills On Top was re-sentenced to forty years' imprisonment for robbery and to life terms for aggravated kidnapping and for deliberate homicide, with the sentences to run consecutively. The court deemed Kills On Top ineligible for parole with respect to the aggravated kidnapping charge and also designated him a dangerous offender for purposes of parole eligibility on

the deliberate homicide charge. *Judgment (Doc. 103-2 at 7).* He appealed again, but the Montana Supreme Court affirmed the sentence. Postconviction relief was denied on December 19, 2000. *Kills On Top v. State*, 15 P.3d 422 (Mont. 2000).

### B.  Proceedings in Federal Court

On December 7, 2001, Kills On Top filed a federal habeas petition. The provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to his petition. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (discussing AEDPA, Pub. L. No. 104-132, tit. I, § 107(c), 110 Stat. 1214, 1226 (Apr. 24, 1996), and contrasting amendments to chapter 154 of Title 28 with amendments to chapter 153).

Among other claims, Kills On Top's habeas petition alleged that his life sentences violated the proportionality principle of the Eighth Amendment. When the State moved to dismiss the proportionality claim – labeled "Claim P" – Kills On Top asserted it was properly exhausted and should not be held procedurally barred. He did not argue that Claim P could be presented in sentence review proceedings or that it was unexhausted for any other reason. *See Pet'r Br. (Doc. 31) at 16-17; Order (Doc. 37) at 2, 4-5, 18-19*. United States Magistrate Judge Richard W. Anderson, acting with the consent of the parties, held Claim P was not fairly presented in state court as a claim predicated on federal law. The claim was deemed exhausted, because no remedy remained available for Kills On Top to

present the claim in state court, but that meant the claim was procedurally defaulted. *See Order (Doc. 27) at 20-23; Gray v. Netherland*, 518 U.S. 152, 162 (1996); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137-39 (9th Cir. 2007) (en banc). Although Kills On Top was given an opportunity to excuse his procedural default, *Order (Doc. 27) at 21-22, 23, 24, 28, 30, 48 ¶ 2; see also Order (Doc. 37) at 2, 4-5,* he did not succeed in doing so, *Order (Doc. 37) at 18-19, 20*. Claim P was dismissed with prejudice as procedurally defaulted without excuse. *Id. at 43 ¶ 1*. A certificate of appealability was denied as to Claim P. *Id. at 42-43, 43 ¶ 4; see also Order (Doc. 40) at 1-2*. Although Kills On Top asked the Court of Appeals to grant a certificate of appealability on other claims, he did not ask the Court of Appeals to certify Claim P. *Mem. at 7 ¶ III*, *Kills On Top v. Mahoney*, No. 05-35433 (9th Cir. June 20, 2007) *(Doc. 46-1)*.

Following a remand for further proceedings on the two claims Judge Anderson had certified, which were unrelated to Claim P, this Court again entered a final judgment against Kills On Top and denied a certificate of appealability on May 26, 2009. *Order (Doc. 92); Judgment (Doc. 93).* Kills On Top unsuccessfully sought a certificate of appealability in the Ninth Circuit Court of Appeals. Orders *(Docs. 99, 100).* The Ninth Circuit's Order stated: "No further filings will be accepted in this closed case." On May 16, 2011, the United States Supreme Court denied a writ of *certiorari. Order (Doc. 99); Clerk Letter (Doc. 102).*

## C.  New Proceedings in State Court

On or about February 3, 2012, Kills On Top applied for review of his 1998 sentence in the Sentence Review Division ("SRD") of the Montana Supreme Court. *See Hinson Email to SRD Judges at 1 (Doc. 106-1 at 42).*The Judges of the Sentence Review Division found that Kills On Top did not receive notice, in the manner prescribed by state law, of his opportunity to apply for sentence review. As a result, they excused Kills On Top's failure to apply for sentence review within 60 days of the imposition of the sentence in 1998. After hearing the application, the Sentence Review Division neither increased nor reduced the sentence. The sentence was affirmed on November 19, 2012. *SRD Decision (Doc. 103-5) at 1-2.* Kills On Top's application for rehearing was denied on February 26, 2013. *SRD Decision (Doc. 103-7) at 4.*

On July 29, 2013, Kills On Top filed a petition for writ of supervisory control in the Montana Supreme Court. *Pet. for Supervisory Writ (Doc. 103-8) at 1*. Because supervisory control was the wrong writ to seek, and because relief was not warranted even if the correct form of petition had been timely filed, the Montana Supreme Court denied and dismissed the petition on October 22, 2013. *Order (Doc. 103-9) at 5*. Rehearing was denied on November 26, 2013. *Order (Doc. 103-11) at 1.*

### D.  **Rule 60 Motion Now Pending**

On March 14, 2014, Kills On Top filed a motion under Fed. R. Civ. P.

60(b)(6), seeking to reopen proceedings on his federal habeas petition to allow the

Court to consider the merits of Claim P.

## II.  **Jurisdiction**

Fed. R. Civ. P. 60(b) "has an unquestionably valid role to play in habeas

cases," even though its application may be qualified in some instances by the

stringent limitations on second or successive petitions in habeas cases. 28 U.S.C. §

2244(b); *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005). At times a court must

recharacterize a Rule 60(b) motion as a "disguised" second or successive petition

requiring pre-authorization from the Court of Appeals. *E.g.*, *United States v.*

*Washington*, 653 F.3d 1057, 1063-64 (9th Cir. 2011). At other times, a Rule 60(b)

motion in a § 2254 case can simply be addressed under the criteria applicable to all

Rule 60(b) motions. *See Gonzalez*, 545 U.S. at 536-38.

Although one of his arguments might lead to a different conclusion, *see* Br.

in Supp. (Doc. 103) at 16 (point heading) (capitalization omitted); *id.* at 23-27, on

the whole, Kills On Top's motion falls in the latter category. A petitioner seeking a

second chance at having the merits of a claim determined favorably to him is, in

substance, applying a second time for federal habeas relief. *Gonzalez*, 545 U.S. at

530-32. But "if neither the motion itself nor the [portion of the] federal judgment

from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id.* at 533. In other words, a petitioner is not making a habeas corpus claim when he "merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* at 532 n.4.

Here, the Court did not consider the merits of Claim P because it was dismissed with prejudice as procedurally defaulted. Like the petitioner in *Gonzalez*, Kills On Top asks the Court to set aside a procedural dismissal and consider the merits of Claim P for the first time. The Court has jurisdiction to consider the Rule 60 motion because it is not, in substance and on the whole, a second or successive petition.

## III. <u>Rule 60(b)(6)</u>

As Kills On Top's motion is validly filed under Rule 60(b)(6), the next question is whether the motion meets the high standards required to obtain relief.[1]

---

[1] Kills On Top's opening brief misrepresented the dismissal of Claim P, based on procedural default, to be *without* prejudice. *See, e.g.*, Br. in Supp. (Doc. 103) at 9. To say a claim is dismissed "without prejudice as procedurally defaulted" does not make sense. Dismissal of a federal habeas claim for lack of jurisdiction or for lack of exhaustion would be without prejudice. Dismissal of a federal habeas claim as procedurally defaulted without excuse or as time-barred is dismissal with prejudice. It "forecloses the possibility that the underlying claims

## A. The *Phelps* Test

Relying on *Phelps v. Alameida*, 569 F.3d 1120, 1137-40 (9th Cir. 2009), Kills On Top asserts that a court considering a motion under Rule 60(b)(6) must consider six factors. In *Phelps*, however, all six of those factors involved an intervening change in the law governing federal habeas procedure. But Kills On Top does not predicate his Rule 60 motion on a change in federal habeas procedural law.

Over a period of 11 years, Phelps filed petitions and motions arguing that his first federal habeas petition was timely, and for a period of 11 years, every court to hear his arguments rejected them in an unpublished opinion, only to adopt them shortly after in a published decision. On each occasion, the argument Phelps made was not contrary to established law; he identified an unresolved issue, presented an argument as to how it should be resolved, then lost, only to see his reasoning adopted as controlling precedent by a different judge or panel months later. *See Phelps*, 569 F.3d at 1122-24. The issue in the case, therefore, was whether these changes in the law – or, more accurately, new precedents in the law – could support reopening of the first, incorrectly time-barred federal habeas petition Phelps had filed in 1998. The *Phelps* court held:

---

will be addressed by a federal court." *McNabb v. Yates*, 576 F.3d 1028, 1029 (9th Cir. 2009) (per curiam).

When a dismissal of a habeas petition rests upon an answer to an open legal question that is promptly rejected and then replaced in a more authoritative opinion by the very answer proposed by a diligent but unsuccessful petitioner, the petitioner is entitled to seek reconsideration of the dismissal entered against him.

*Phelps*, 569 F.3d at 1124.

In order to reach this conclusion, the *Phelps* court reasoned that *Gonzalez* "did *not* hold that denial of the [Rule 60(b)(6)] motion was required because it rested on a subsequent change in the law." *Id.* at 1132-33 (discussing *Gonzalez*, 545 U.S. at 533) (emphasis in *Phelps*). Consequently, following *Gonzalez*, *Phelps* overruled prior circuit precedent, *Tomlin v. McDaniel*, 865 F.2d 209, 210-11 (9th Cir. 1989), a civil rights action which had held that a Rule 60(b)(6) motion could *never* be granted based on an intervening change in the law. *See Phelps*, 569 F.3d at 1133-34 (citing *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). And the *Phelps* court went on to identify six factors – two from *Gonzalez* and four from *Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987), *cited in Gonzalez*, 545 U.S. at 534, and *Harvest v. Castro*, 531 F.3d 737, 748 (9th Cir. 2008) – that "are particularly useful in applying Rule 60(b)(6) to rejected petitions for habeas corpus." *Phelps*, 569 F.3d at 1135 n.19. The two *Gonzalez* factors identified were: (1) whether the intervening change in the law overruled an otherwise settled precedent, and (2) the petitioner's diligence in pursuing review of the issue after an intervening change in the law. *Id*. at 1135-36. The four *Ritter* factors identified

were:  (1) whether granting the motion to reconsider would undo the past executed effects of the judgment, thereby disturbing the parties' reliance interest in the finality of the case, (2) an examination of the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief, (3) the closeness of the relationship between the two cases at issue – that is, the decision the petitioner seeks to reopen and a subsequent decision embodying a change in the law, and (4) considerations of comity.  *Id.* at 1138-40.

All six factors, however, apply "when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law." *Phelps*, 569 F.3d at 1133. Like *Phelps*, *Gonzalez*, *Ritter* and *Tomlin* all questioned whether a change in the law constituted an "extraordinary circumstance" sufficient to justify relief under Rule 60(b)(6). The Court of Appeals has applied the six *Phelps* factors only in cases where the petitioner relies on a change in the law to claim a right to relief under Rule 60(b)(6). *See, e.g.*, *Jones v. Ryan*, 733 F.3d 825, 838-40 (9th Cir. 2013); *Lopez v. Ryan*, 678 F.3d 1131, 1135-37 (9th Cir. 2012); *Robertson v. Walker*, No. 12-16067, 543 Fed. Appx. 722, 723-24 (9th Cir. Oct. 25, 2013) (unpublished mem. disp.) (*see* Fed. R. App. P. 32.1; 9th Cir. R. 36-3(b)). *Ritter*, too, was described in *Harvest* as coming into play when a party filing a Rule 60(b) motion "proves that there has been an intervening change in the law." *Harvest*, 531 F.3d at 748 (addressing modification of a judgment with prospective effect under Rule

60(b)(5)). While *Phelps* does indeed contain some broad statements suggesting that all motions under Rule 60(b)(6) in habeas cases, and possibly all other cases as well, should be governed by its test, *see, e.g.*, 569 F.3d at 1135 n.19, the context of the decision, the precedents on which it relies, and the manner of its application since issuance suggest that its scope is limited to cases in which "a Rule 60(b)(6) motion [is] predicated on an intervening change in the law." *Phelps*, 569 F.3d at 1133.

If Kills On Top identified a change in the *federal procedural* law that led to dismissal of Claim P, the *Phelps* test would likely control. But, as the State correctly points out, Resp't Br. (Doc. 106) at 13, he does not. Pressed by his misapplication of the *Phelps* test to identify "[any] intervening change in the law," *Br. in Supp. at 16 (adding bracketed word and quoting remainder from Phelps, 569 F.3d at 1135)*, Kills On Top argues that "intervening changes in the law concerning proportionality principles generally support granting relief from the judgment," *Br. in Supp. at 16 (point heading) (capitalization omitted)*; *id.* at 23-27. To the extent he advances any intervening change in the *substantive* law governing the consideration of the merits of Claim P, he argues "that a subsequent change in substantive law is a 'reason justifying relief' from the previous denial of a claim" and so transforms his Rule 60(b) motion into "in substance a successive habeas petition." *Gonzalez*, 545 U.S. at 532 (quoting Fed. R. Civ. P. 60(b)(6)). *Gonzalez*

closes off that vein of argument.

**B.  <u>Applicable Standards</u>**

The standards that can properly be applied to Kills On Top's motion are less specific than the six factors identified by *Phelps*. A motion under Rule 60(b)(6) must be reasonably timely, *Fed. R. Civ. P. 60(c) (formerly Rule 60(b) second sentence)*, and must demonstrate that "extraordinary circumstances prevented a litigant from seeking earlier, more timely relief," *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993), or "prevented [the] party from taking timely action to prevent or correct an erroneous judgment," *Greenawalt v. Stewart*, 105 F.3d 1268, 1273 (9th Cir. 1997) (per curiam) (quoting *Alpine Land*, 984 F.2d at 1049). The extraordinary circumstance must be "beyond his control." *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). "[R]elief may not be had where the party seeking reconsideration has ignored normal legal recourses." *Alpine Land*, 984 F.2d at 1049 (quoting *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249, 250 (9th Cir. 1989)) (internal quotation marks omitted). These requirements apply in all Rule 60(b) cases, but they are especially significant in the habeas context, because they "limit the friction between the Rule and the successive-petition prohibitions" of 28 U.S.C. § 2244(b). *See Gonzalez*, 545 U.S. at 535.

Kills On Top makes several assertions to attempt to show why it is

appropriate to reopen the original federal habeas proceedings under Rule 60(b).

These assertions are analyzed below.

### C. <u>Time Bar of Federal Petition</u>

Kills On Top asserts he "*could not* apply for sentence review prior to filing a federal petition . . . because the sentence review application would not toll the AEDPA's statute of limitations at the time of his appeal." Reply at 14 (emphasis added); *see also* Br. in Supp. at 20-21. He did not say so in the original proceedings in this Court. On the contrary, he insisted that Claim P was properly exhausted in the Montana Supreme Court. *See Br. re: Procedural Defenses (Doc. 31) at 16-17.* He did not ask the Court to consider whether sentence review would toll time under 28 U.S.C. § 2244(d)(2).[2]

---

[2] Kills On Top's brief in support of his motion misrepresents the holding of *Rogers v. Ferriter*, No. CV 12-13-BU-DLC (D. Mont. filed Mar. 9, 2012). Kills On Top says the case holds that "an application for sentence review may not toll the AEDPA's statute of limitations." *Br. in Supp. at 20.* On the contrary, *Rogers* held that sentence review in Montana is "State post-conviction or other collateral relief" within the meaning of 28 U.S.C. § 2244(d)(2), and the federal limitations period *will* be tolled while a sentence review application is both "properly filed" and "pending," as the federal statute requires. Rogers' application was not properly filed and pending throughout the whole of the time he claimed it was, so his petition was time-barred. *See Order (Doc. 22) at 4-5; Findings and Recommendation (Doc. 20) at 4-15, Rogers*, No. CV 12-13-BU-DLC (D. Mont. judgment entered Aug. 2, 2013), *available at* 2013 WL 3990693. *Rogers* is now pending in the Ninth Circuit Court of Appeals, No. 13-35790 (9th Cir. filed Aug. 29, 2013).

So far as this Court is aware, no Montana federal court considered whether state sentence review would toll time under 28 U.S.C. § 2244(d)(2) until 2007, after the conclusion of the original proceedings in this Court on Kills On Top's

Even if Kills On Top were correct that federal time may not have been tolled for sentence review, his premise is faulty. He could have filed for sentence review prior to filing his federal petition. AEDPA's statute of limitations was enacted while Kills On Top's postconviction petition was pending in state court. Consequently, although the federal limitations period commenced on April 24, 1996, it was immediately tolled under 28 U.S.C. § 2244(d)(2). State postconviction proceedings remained pending continuously until December 19, 2000. The federal limitations period began to run on December 20, 2000. Kills On Top filed his federal petition on December 7, 2001. He had ample time to file an application for sentence review within 60 days after the termination of his postconviction proceeding. *See* Mont. Code Ann. § 46-18-903(1).

Even if an application for review had still been pending before the Sentence Review Division at the time Kills On Top needed to file his federal petition, he could have filed his federal petition, with or without Claim P included, and moved to stay the federal proceedings pending completion of sentence review. *See, e.g.*,

_____

petition. *See Findings and Recommendation (Doc. 23) at 7-8*, *Weaver v. Attorney General*, No. CV 06-94-M (D. Mont. filed May 24, 2007), *adopted by* Order (Doc. 97) at 2, 11-12 (D. Mont. Dec. 12, 2008). Weaver appealed, but he argued only that the District Court erred in finding he did not prove actual innocence. *See Weaver v. Att'y Gen'l*, No. 08-36057 (9th Cir. Mar. 12, 2010). Following issuance of *Wall v. Kholi*, __ U.S. __, 131 S. Ct. 1278, 1284-87 (2011), *Rogers* recognized that "*Kholi* abrogates *Weaver*." 2013 WL 3990693 at *9.

These changes in the procedural law applying to federal habeas petitions in Montana are not relevant to Kills On Top, who applied for sentence review years after Claim P was dismissed.

*James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) ("We have long held that a federal habeas petitioner has a right to amend a mixed petition to delete unexhausted claims as an alternative to suffering a dismissal.") (citing *Calderon v. U.S. District Court* ("*Taylor*"), 134 F.3d 981, 984-89 (9th Cir. 1998)); *see also* Order (Doc. 37) at 19.[3]

In sum, Kills On Top's premise is faulty, and his conclusion would not follow from it even if it were sound. Nothing prevented him from applying for sentence review before filing his federal petition or even while his federal petition was pending. Nothing prevented him from bringing any timing problem to the attention of the Court. His retrospective apprehension of a prospective time bar is negated by the facts and is not an extraordinary circumstance justifying reopening of the proceedings under Rule 60(b)(6).

---

[3] A portion of *Taylor* expressing skepticism about a petitioner's ability later to amend his petition to include newly exhausted claims was found to be dicta in *Calderon v. U.S. District Court* ("*Thomas*"), 144 F.3d 618, 621 (9th Cir. 1998). A subsequent hearing of the *James* case approved such amendment. *James v. Pliler*, 269 F.3d 1124, 1127 (9th Cir. 2001). In *Kelly v. Small*, 315 F.3d 1063, 1070-71 (9th Cir. 2003), the appellate court required district courts *sua sponte* to consider the stay-and-abey procedure. That requirement was overruled by *Robbins v. Carey*, 481 F.3d 1143, 1148-49 (9th Cir. 2007), following *Pliler v. Ford*, 542 U.S. 225, 234 (2004). Throughout these developments, the stay-and-abey procedure remained viable. Two weeks before the Court ruled on Kills On Top's motion for a certificate of appealability, *see Mot. for COA (Doc. 38); Order (Doc. 40),* the Supreme Court endorsed stay-and-abey under conditions that likely would have been met had Kills On Top timely pursued sentence review. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

### D.  Sentence Review and Procedural Default

The essence of the Rule 60(b) motion is an assertion that the Court must have erred when it deemed Claim P technically exhausted based on a finding that no remedies remained available in state court, because the Sentence Review Division did not dismiss Kills On Top's application as untimely but gave him a full hearing. Therefore, Kills On Top suggests, Claim P was not actually exhausted, and as it is now exhausted, the Court should reopen the proceedings to hear it. *See, e.g.*, Reply at 7-9, 10-11, 12.

For at least three reasons, the Sentence Review Division's hearing of Kills On Top's application does not provide a basis for relief in this Court under Rule 60(b).

### 1.  Error Does Not Suffice to Reopen a Final Judgment

First, assuming the Court erred in deeming Claim P exhausted and procedurally defaulted, error can be appealed. It is not an extraordinary circumstance under Rule 60(b)(6), because it does not "prevent[]" a litigant "from taking timely action to prevent or correct" the district court's judgment. *Greenawalt*, 105 F.3d at 1273.

Nor is error a "defect in the integrity of the federal habeas proceeding" comparable to fraud on the court. *Rodriguez v. Mitchell*, 252 F.3d 191, 199 (2d Cir. 2001), *cited in Gonzalez*, 545 U.S. at 532 n.5, illustrates this fact. There, the

petitioner's federal habeas claims were not dismissed on procedural grounds but were addressed and denied on the merits of the claims for relief. The petitioner sought to reopen the federal habeas proceeding because the reasons his trial counsel gave for refusing to testify were false, and because the prosecution failed to disclose it had deposed trial counsel by telephone in a disciplinary proceeding. *See Rodriguez*, 252 F.3d at 195-97. Because those facts went to the integrity of the original federal habeas proceeding and not to the validity of the state criminal judgment, they were properly considered in a Rule 60(b) motion and were not, in substance, a second petition for relief. *Id.* at 198-200. Even so, Rodriguez's allegations did not support relief under Rule 60. *Id.* at 201.

If error were an integrity-undermining defect like fraudulent misrepresentations or omissions, any instance of error, whether procedural or substantive, would justify reopening of a final judgment under Rule 60(b)(6), and there would be no need to appeal in a timely manner. That is plainly not the purpose of the rule. *See Ackermann v. United States*, 340 U.S. 193, 197-200 (1950); *Klaprott v. United States*, 335 U.S. 601, 613-14 (1949).

Kills On Top must show, therefore, that something beyond his control prevented him from appealing the ruling on Claim P. But he has made no such showing. He sought a certificate of appealability on Claim P in this Court. *See Mot. for COA (Doc. 38) at 3-4 ¶ 7*. When this Court denied a COA on that claim and

certified two others instead, *see Orders (Doc. 37 at 43 ¶ 4; Doc. 40 at 2),* Kills On

Top abandoned Claim P. He did not seek a COA on Claim P from the Court of

Appeals or brief Claim P as an uncertified issue. *See* Appellant Br. at 39-62, *Kills*

*On Top v. Mahoney*, No. 05-35433, 2005 WL 3517779 (9th Cir. Oct. 3, 2005);

Appellant Reply at 25-28, *Kills On Top*, No. 05-35433 (9th Cir. Mar. 7, 2006).

Kills On Top states that he "had to" abandon Claim P because he wanted to

brief uncertified *Brady* claims, and they took up too much of his brief – 24 pages.

Reply at 15. (The Court of Appeals did not certify the *Brady* claims. *See* Mem. at

6, *Kills On Top*, No. 05-35433 (9th Cir. June 20, 2007) (Doc. 46-1 at 7).) Page

limits and the concomitant need to select certain issues and shorten one's treatment

of others, or relinquish them altogether, certainly limit a litigant's presentation of

his claims, but they are hardly an extraordinary circumstance preventing him from

appealing.

In sum, therefore, Kills On Top considered which issues were strongest and

chose to raise them and abandon others on appeal. "By no stretch of imagination

can the voluntary, deliberate, free, untrammeled choice of petitioner not to appeal,"

*Ackermann*, 340 U.S. at 200, justify reopening the original proceedings eight years

after Kills On Top should have appealed this Court's dismissal with prejudice of

Claim P.

## 2. **Kills On Top Fails to Demonstrate Error**

Second, the fact that a state court chose to hear Kills On Top's application for sentence review in 2012 does not mean this Court erred when it found, in 2005, that Claim P was procedurally defaulted.

The Judges of the Sentence Review Division excused Kills On Top's untimely filing in 2012 because they concluded that he was not given notice, in the form required by state law, of his right to apply in 1998 for sentence review. *See Hinson to SRD Judges at 1-2 (Doc. 106-1 at 42-43); see also Reply at 13-14.* But Kills On Top had the same notice of his opportunity to apply for sentence review as he had of his opportunity to take a direct appeal, to apply for postconviction relief, and to apply for federal habeas relief. A statute advised him of it. Mont. Code Ann. § 46-18-903(1) (1997).[4] Moreover, the Montana Supreme Court's opinion on Kills On Top's second postconviction appeal also directed him to sentence review. *See Kills On Top v. State*, 15 P.3d 422, 440 ¶ 38 (Mont. 2000). Kills On Top has been represented by counsel from the outset of the criminal proceedings in state court.

---

[4] At the time of Kills On Top's re-sentencing, the statute did not require written notice to be given to the defendant's attorney, only to the defendant. *See* 2003 Mont. Laws ch. 69 §§ 3, 6 (eff. July 1, 2003). *Compare Reply at 13* (stating that "petitioner *and his counsel* were not properly notified of his right to sentence review in accordance with Montana law") (emphasis added). In addition, Montana law apparently contains no equivalent to Fed. R. Crim. P. 32(j) and does not require a sentencing judge to advise a defendant of his right to take a direct appeal. Counsel does that.

Because he certainly knew of the availability of sentence review, if Kills On Top believed there was some significance in the trial court's failure to effect notice in the form prescribed by the state statute, he could and should have brought the lack of notice to the attention of this Court when he was expressly given an opportunity in 2003 to excuse his procedural default of Claim P. Order (Doc. 27) at 28-30. His failure to do so does not constitute an error by the Court. And an attorney's decision or oversight is not an extraordinary circumstance justifying relief under Rule 60(b)(6). *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010).

### 3.  <u>Any Claim of "Clear Error" Is Time-Barred</u>

Even assuming, for the sake of argument, that the Court's decision of Claim P was erroneous in some way Kills On Top has failed to identify, he still could not obtain relief under Rule 60(b). Provided the mistake amounts to "clear error," *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999) (en banc), "a district court's erroneous reading of the law is a 'mistake' sufficient to require reconsideration of an order" under Rule 60(b), *Yniques v. Cabral*, 985 F.2d 1031, 1034 (9th Cir. 1993) (citing *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982), and *Gila River Ranch, Inc. v. United States*, 368 F.2d 354, 357 (9th Cir. 1966)), *qualified by McDowell*, 197 F.3d at 1255 n.4.

But "mistake" is a ground for relief listed in Rule 60(b)(1). Motions under Rule 60(b)(1) must be made "no more than a year after the entry of the judgment

or order or the date of the proceeding." Fed. R. Civ. P. 60(c). In other words, if this Court committed clear error, Kills On Top had to correct it by filing a Rule 60(b)(1) motion on or before May 16, 2012, at the latest (assuming, without deciding, that the denial of his petition for writ of *certiorari* serves as the trigger date under Rule 60(c)). He did not file until March 14, 2014. To the extent he was unaware of "clear error" until the Sentence Review Division agreed to hear his application, the error was not clear and was not committed by this Court.

Where another subsection of Rule 60(b) is pertinent but does not support relief, subsection (b)(6), allowing a court to consider "any other reason that justifies relief," does not apply. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988); *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088-89 (9th Cir. 2001). Consequently, even if the Court committed clear error in dismissing Claim P with prejudice as procedurally defaulted, Kills On Top cannot obtain relief at this late date.

## E. <u>Rule 8 of the Sentence Review Division Rules</u>

In his reply brief, Kills On Top raises an argument for the first time. Kills On Top suggests that Rule 8 of the Rules of the Sentence Review Division of the Montana Supreme Court required him, in effect, to exhaust his federal remedies before exhausting his state remedies. *See Reply (Doc. 109) at 9, 14, 15.* This argument would, if supportable, mean that he could simply file a new habeas

petition, and it would not be subject to the stringent restrictions on second or successive petitions. His Rule 60(b) motion would be inapposite, but he could still proceed to a hearing on the merits of Claim P in this Court without obtaining the Court of Appeals' leave to file under 28 U.S.C. § 2244(b).  The Court rejects this argument for the following reasons

Generally, petitioners may not return to federal court to litigate claims exhausted after disposition of their first federal habeas petition. On the contrary, before filing in federal court they are required to exhaust in state court all the federal habeas claims they intend to make. *See, e.g.*, *Slack v. McDaniel*, 529 U.S. 484, 486-89 (2000); *Rose v. Lundy*, 455 U.S. 509, 520 (1982); *see also Rhines*, 544 U.S. at 275-76. But there is an exception. If Claim P was *unripe* when Kills On Top filed his petition in 2001, then he might file a new petition that would not be subject to the requirements for filing second or successive petitions.

For example, a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), alleging that a capital petitioner cannot be executed because he is incompetent, is ripe only at the point of execution of the sentence. Thus, a *Ford* claim typically cannot be made until an execution date is set, and a date typically is not set (or is stayed) until the conclusion of both direct and collateral challenges to the conviction and sentence. For those reasons, a *Ford* claim need not be made in a first habeas petition challenging the conviction and sentence. Another federal

habeas petition presenting a *Ford* claim may be filed subsequently to the first

without being "second or successive" within the meaning of 28 U.S.C. § 2244(b).

*See, e.g.*, *Panetti v. Quarterman*, 551 U.S. 930, 943-47 (2007); *Stewart v.

Martinez-Villareal*, 523 U.S. 637, 643-44 (1998).

Kills On Top does not say so, but these cases are implicated in his

suggestion that state law required him to proceed in federal court before he could

apply for sentence review in state court. He is mistaken, however, about what

Sentence Review Division Rule 8 said. It said:

> When there is a pending appeal or request for post-conviction relief,
> the application for Sentence Review should not be filed until such
> time as the petition for post-conviction relief or appeal has been
> determined, at which time the defendant shall be given sixty (60) days
> in which to file for review of the sentence.

Rule 8, Sentence Review Division Rules (1999).[5]

---

[5] The Court has a copy of the 1999 Rules of the Sentence Review Division,
signed by Judges Phillips, Langton, and Johnson, in which this rule is the second
paragraph of Rule 7. *See also Hinson to Parker (Doc. 106-1 at 40) (referring to
Rule 7 and quoting the same language quoted here).* At least in some previous
Thomson-West publications, the language is in both the second paragraph of Rule
7 and Rule 8. *See, e.g., Rules of the Sentence Review Division, Montana Rules of
Court (State) (2008).* But the language is identical regardless of the number.

The Rules of the Sentence Review Division were amended effective October
28, 2013. The issue discussed here is now addressed in Rule 2, paras. 1 and 2, of
the amended rules: "Within sixty (60) days after sentence is imposed, a defendant
may apply for the sentence to be reviewed by the Division. [¶] If an appeal to the
Supreme Court or petition for post conviction relief is filed, the 60 day period
commences when the appeal or petition is complete." Although the old rules are
pertinent here, the current Rule 2 is consistent with the Court's discussion and
conclusion.

The rule did not refer to a federal petition for writ of habeas corpus. The highest authority in the land has long required state prisoners to delay filing in federal court until "the state court shall have finally acted on the case." *Ex parte Royall*, 117 U.S. 241, 253 (1886).

Also, Rule 8 did not require that an appeal or a postconviction petition had to be filed and determined before a sentence review application could be filed. The rule referred only to an appeal or petition that is *pending* when an applicant *contemplated* applying for sentence review. In effect, the rule said to its readers, "if you happen to have an appeal or postconviction petition pending right now, please hold on to your sentence review application and submit it within 60 days of conclusion of those proceedings."

Further, Rule 8 addressed an exception. The general rule was and is stated in the controlling statute, Mont. Code Ann. § 46-18-903(1). It requires a defendant to file for sentence review within 60 days of the imposition of the sentence. (Sixty days is also the period of time for filing a notice of appeal to the Montana Supreme Court. Mont. R. App. P. 4(5)(b)(i)). The 1999 versions of Sentence Review Division Rules 1 and 7 echoed this requirement. An application filed more than sixty days after sentencing was untimely, the defendant had to give reasons why his application should be heard, and the SRD could have "refuse[d] to hear such application." Sentence Review Division 7 para. 1; *see also* Mont. Code Ann. § 46-

18-903(3). But the Rule stated the Division "*will* hear late applications which have been caused by the taking of an appeal to the Montana Supreme Court." Sentence Review Division 7 para. 1 (1999) (emphasis added). Rule 8, or Rule 7 para. 2, simply created a limited "safe harbor" when a defendant had an appeal or postconviction petition pending at the time he considered applying for sentence review.

Even if Rule 8 had said what Kills On Top says, he did not follow the rule. He did not file his sentence review application within 60 days of any notable event. He filed on February 3, 2012 – 263 days after the conclusion of his federal habeas proceedings in the United States Supreme Court on May 16, 2011. In fact, even if SRD Rule 8 applied as Kills On Top suggests, so that his Rule 60 motion should be deemed a new petition, the new petition would be time-barred. With tolling for sentence review proceedings between February 3, 2012, and February 26, 2013, as well as for his litigation of a petition for supervisory control in the Montana Supreme Court between July 29 and November 26, 2013, Kills On Top's Rule 60 motion was filed 159 days too late.

Former Sentence Review Division Rule 8 has no role to play in the determination of Kills On Top's Rule 60(b) motion.

## F. Conclusion

Kills On Top had the "one fair shot at habeas review that Congress intended

that he have." *Gonzalez*, 545 U.S. at 542 (Stevens, J., dissenting), *quoted without proper attribution in* Reply at 15. He chose to present Claim P in his federal habeas petition without first applying for sentence review. He asserted in this Court that Claim P was properly exhausted. When Claim P was dismissed with prejudice as procedurally defaulted without excuse, he chose not to appeal. Instead, he appealed other claims. Having failed to obtain federal habeas relief, and having been denied a writ of certiorari in May 2011, Kills On Top finally applied in state court on February 3, 2012, for review of his 1998 sentence. The Sentence Review Division found it had discretion to hear the application in light of a defect in the notice procedure prescribed by state law. But neither its decision nor anything in the entire course of the nearly ten-year federal habeas proceedings constitutes an extraordinary circumstance that prevented Kills On Top from fully litigating Claim P. The Court may not reopen the federal habeas proceedings under Fed. R. Civ. P. 60(b)(6) so that he may now litigate a claim he previously abandoned.

## IV. <u>Certificate of Appealability</u>

The question remains open in the Ninth Circuit whether a petitioner always requires a certificate of appealability ("COA") to appeal an adverse ruling on a motion under Fed. R. Civ. P. 60(b) when the underlying action is a petition under 28 U.S.C. § 2254. *Jones v. Ryan*, 733 F.3d 825, 832 n.3 (9th Cir. 2013).

Assuming a COA is required and permitted, it must be issued or denied

when the district court enters its final order. Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court has taken only a brief look at the merits of Claim P, but, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Moreover, Judge Anderson denied a certificate of appealability. Order (Doc. 37) at 43 ¶ 4.

But even if Claim P meets the relatively low threshold for issuance of a COA, Kills On Top fails to identify an extraordinary circumstance sufficient to justify reopening of the federal habeas proceedings terminated in 2011. Kills On Top does not identify any change in habeas procedural law that shows he was

erroneously deprived of a hearing on the merits, as occurred in *Phelps*. To whatever extent the Court erred in dismissing Claim P as procedurally defaulted, Kills On Top had every opportunity to correct error on appeal. He simply chose to press his appeal on other grounds. If a state prisoner were entitled to reopen a closed federal habeas proceeding whenever a state court subsequently decided to rule on a claim, there would be little significance in either AEDPA's restrictions on second or successive petitions or its one-year limitations period. There is no reason to encourage further proceedings. A COA will be denied.

Based on the foregoing, the Court enters the following:

**ORDER**

1. Kills On Top's motion under Fed. R. Civ. P. 60(b)(6) (Doc. 103) is DENIED.

2. To the extent the Court is required and permitted to consider a certificate of appealability, it is DENIED.

DATED this 4th day of September, 2014.

*/s/ Carolyn S. Ostby*
Carolyn S. Ostby
United States Magistrate Judge